William P. HEADLEE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9512–CR–727.

Court of Appeals of Indiana.

April 8, 1997.

Rehearing Denied June 18, 1997.

Transfer Denied Aug. 20, 1997.

James C. Spencer, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant-Appellant William Headlee (Headlee) appeals following his conviction for possession of cocaine, a Class C felony.[1]

We reverse and remand.

### ISSUES

Headlee raises several issues including sufficiency of the evidence, admissibility of various evidence, error in instructing the jury and error in the form of judgment entry. We address only the following issue, which is dispositive: Whether the trial court erred in admitting testimony that the confidential informant had given Headlee cocaine in exchange for legal services in the past.

### FACTS AND PROCEDURAL HISTORY

The incident underlying this appeal commenced when police received information from a confidential informant that the confidential informant's attorney had agreed to accept cocaine in exchange for legal services rendered. The facts most favorable to the jury's verdict reveal that Michael Witt was a confidential informant for the Indiana State Police. Based on information received from Witt, Headlee, a local attorney, became the target of a police criminal investigation. Headlee was engaged to Witt's sister and had represented Witt in criminal matters in the past. On September 13, 1993, Witt called Headlee from Police Headquarters and offered to pay Headlee for his legal representation with cocaine. Witt again telephoned Headlee later that same evening, but Headlee could not talk at the time and instructed Witt to call him the following morning. On September 14, 1993, at approximately 6:00 p.m., Witt called Headlee and again made reference to payment by cocaine. Specifically, Witt said that if Headlee wanted payment in cash, it might take some time, but that he could pay Headlee with "the other." After some discussion, Headlee agreed that one ounce would "take care of everything." These telephone conversations were recorded and monitored by police, and the transcripts were admitted at trial over strenuous objection.

Witt met Headlee at the Bow Spirits bar in Indianapolis. After approximately 25 minutes inside the bar, the two left together. Each walked toward their respective cars. Witt picked up the package of cocaine from his car and took it to Headlee's car. Headlee was seated in the front seat driver's side, and Witt got in the passenger door and sat in the front seat. Witt asked Headlee if he wanted to taste it to make sure it wasn't talcum powder. Headlee declined. Surveillance officers were nearby, but could not see inside the car due to the rain.

Police officers moved in moments later and arrested Headlee. They found a bag of cocaine under the driver's side floor mat. IPD Detective Michael Morris read Headlee his Miranda rights, which Headlee acknowledged by nodding his head. Headlee was subsequently transported to the Indianapolis Police Department Post on 42nd and College.

1. Ind.Code 35–48–4–6.

After arriving at the police post, Headlee told police that he had purchased cocaine from Witt in the past. He also told a deputy prosecutor, with whom he had requested to speak, that he was planning on taking the cocaine to an upcoming continuing legal education seminar at San Padre Island, Texas.

On September 15, 1993, Headlee was charged by information with possession of cocaine as a Class C felony. Several pre-trial motions were thereafter filed. First, in July of 1994, Headlee notified the court of his intent to rely upon the defense of entrapment. In November of 1994, Headlee filed a motion in limine to preclude Witt's testimony at trial, due to the State's inability to produce Witt for deposition. The State was properly notified of scheduled depositions on two separate occasions, and on both occasions, notified Headlee that Witt could not be located. Headlee also filed a pre-trial motion to suppress the tape recorded conversations between Witt and Headlee due to the State's failure to produce Witt for deposition. Following a hearing, Headlee's motion in limine to exclude Witt as a witness was granted, and his motion to suppress was denied. Headlee also interposed a pre-trial motion in limine seeking to exclude any prior bad acts not resulting in formal charges or arrest. On the first day of trial, Headlee again filed a motion to exclude the taped telephone conversations.

The case proceeded to trial, and Headlee was found guilty by a jury of possession of cocaine, as a Class C felony. He now appeals, arguing trial court error on a number of issues.

## DISCUSSION AND DECISION

### Hearsay Testimony of Prior Bad Acts

Headlee contends that the trial court erred in admitting hearsay testimony that Witt had given Headlee cocaine in exchange for legal services in the past. This issue likely took root when, at the suppression hearing, Detective Morris testified that Witt told him that Witt had previously given Headlee cocaine in exchange for legal services. Headlee filed a motion in limine seeking to exclude all evidence of uncharged prior misconduct. The court heard argument on the motion, and

ruled that the State would not be permitted to admit such evidence unless it could make a valid argument under Ind.Evidence Rule 404(b).

As its first witness, the State called former Indiana State Police Sergeant Robert Cooley. Headlee objected based on his previously filed motion in limine, and the court conducted a preliminary examination of Sergeant Cooley outside the presence of the jury. Sergeant Cooley testified that he heard Witt tell Detective Morris that Headlee had requested Witt to pay for his legal fees in cocaine on occasions in the past. Sergeant Cooley went on to testify that this information led police to pursue a criminal investigation of Headlee. The State argued that it was not offering this evidence for the truth of the matter asserted, but rather to explain to the jury how and why the police investigation commenced. Headlee argued that the State's justification was a mere subterfuge to get evidence of prior bad acts before the jury so that they would believe Headlee committed the present act. The trial court permitted the testimony to come before the jury.

At trial, Sergeant Cooley testified, over objection, that on August 25, 1993, he attended an interview with Detective Morris and Witt, in order to determine whether he would authorize a criminal investigation of Headlee. Headlee objected to this testimony on the basis of hearsay and Evid.R. 404(b). The trial court overruled the objection and instructed the jury that "the answer you are going to hear will not—is not being stated for the truth of the matter, but merely to explain why certain actions were subsequently taken in this investigation. So, it is to show you why the investigation was commenced, it is not to be considered by you ... as evidence of any acts or actions that may have been performed." (R. 400–401). Sergeant Cooley then told the jury that Witt said that he had paid Headlee for legal services with cocaine in the past. Based on this information, Sergeant Cooley authorized an investigation of Headlee.

Later in the trial, Detective Morris corroborated Sergeant Cooley's testimony. Specifically, Detective Morris testified, over Head-

lee's hearsay objection, that Witt told him that he had paid Headlee for legal services with cocaine in the past and that Headlee had agreed to accept cocaine in exchange for his representation of Witt on some pending cases in which he was representing Witt. (R. 747–748). The jury was given no limiting instruction with regard to this testimony.

Witt ultimately testified for the defense and denied ever having exchanged cocaine for legal services with Headlee. (R. 986). Witt testified that he lied to Detective Morris because he had become addicted to cocaine and was desperate for money. (R. 987–88). Witt further testified that Detective Morris told him that he would pay him well, would get his car back, and would provide him with protection if he helped police "bust[ ] an attorney." (R. 989).

■ Hearsay is evidence of a statement made out of court that is offered in a judicial proceeding to prove the truth of a fact asserted in the statement. Evid.R. 801(c). When the admissibility of evidence of out-of-court statements received by police officers engaged in investigative work is challenged as hearsay, and the State urges a purpose other than to prove a fact asserted therein, the court must employ the following analysis: First, the court must consider whether the fact to be proved under the State's suggested purpose for the statement is relevant to some issue in the case; and second, the court must consider whether the danger of prejudice outweighs the probative value. *Craig v. State*, 630 N.E.2d 207, 210–11 (Ind.1994).

■ The tape recorded conversations between Witt and Headlee adequately explained to the jury how and why the police initiated its criminal investigation of Headlee. Additional information with regard to this point was not necessary and was therefore not relevant. Relevance is the tendency to make a fact of consequence to the determination of the action more or less probable. Evid.R. 401. If the fact sought to be proved under the suggested non-hearsay purpose is not relevant, or it is relevant but its danger of unfair prejudice substantially outweighs its probative value, the hearsay objection should be sustained. *Craig*, 630 N.E.2d at 211. We do not find that the contested

statements had any conceivable relevance, other than to prove the facts asserted in the statements.

In *Bonner v. State*, 650 N.E.2d 1139 (Ind. 1995), the supreme court reviewed a strikingly similar issue regarding the improper admission of hearsay evidence. In *Bonner*, several police officers testified as to the substance of statements made to them by police informants. One officer testified that police had information that "[the defendant] was involved in drug trafficking in Elkhart County." *Id.* at 1141. The officer further testified that police informants indicated that "[the defendant] was selling cocaine and/or marijuana." *Id.* The defense objected on hearsay grounds, and the State argued that it was merely introducing the evidence to demonstrate why the police took certain actions, and hence the evidence was non-hearsay. *Id.* at 1140. Using the analysis set forth in *Craig supra*, the supreme court found reversible error, holding that "[b]ecause the out-of-court statements lacked relevance to any contested issue other than the matters asserted therein, they must be viewed either as irrelevant or as hearsay and their admission was improper." *Bonner*, 650 N.E.2d at 1141.

■ A trial error in the admission of hearsay evidence warrants remedial action on appeal, where such error caused prejudice to the substantial rights of the defendant. *Craig*, 630 N.E.2d at 209. An error is not harmless if it prejudices the defendant's substantial rights. *Bonner*, 650 N.E.2d at 1141. To determine whether the defendant's substantial rights were prejudiced, we must assess the probable impact of the improperly admitted evidence upon the jury. *Id.* The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction. *Id.* A reversal may be compelled if the record as a whole discloses that the erroneously admitted evidence " 'was likely to have had a prejudicial impact upon the mind of the average juror, thereby contribut-

ing to the verdict.' " *Id.* (citing *Hardin v. State,* 611 N.E.2d 123, 132 (Ind.1993)).

 Although the jury was presented with other evidence of Headlee's guilt, testimony that Headlee previously accepted cocaine from Witt was presented to the jury by both Sergeant Cooley and Detective Morris. The prejudicial impact of this repetitive testimony cannot be ignored. In addition, the jury was not given a limiting instruction with regard to the testimony of Detective Morris. Accordingly, we cannot conclude that there was no substantial likelihood that this evidence contributed to Headlee's conviction. We therefore decline to find harmless error.

 The only relevance that we can glean from this evidence is the possibility that the State was introducing it for the purpose of negating Headlee's entrapment defense. Ind.Code 35–41–3–9 provides as follows:

(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Our supreme court has consistently held that "if the accused had the predisposition to commit the crime and the police merely afforded him an opportunity to do so, then the defense of entrapment is not available." *McGowan v. State,* 674 N.E.2d 174, 175 (Ind.1996). The defense of entrapment becomes available to a defendant when the prohibited conduct was the result of a law enforcement officer or his agent persuading the defendant to engage in the conduct, and the defendant was not predisposed to commit the offense. *Gilley v. State,* 535 N.E.2d 130, 131 (Ind.1989). The defense of entrapment may be rebutted by demonstrating the non-existence of only one of the above two elements. *McGowan,* 674 N.E.2d at 175. Specifically, the State must prove either that the accused's conduct was not the product of the efforts of the law enforcement involved or that the accused was predisposed or "ready, willing and able" to engage in such conduct anyway. *Gray v. State,* 579 N.E.2d 605, 609 (Ind.1991), *reh'g denied.*

In the instant case, the potential that the jury was significantly impacted by this evidence is great. Although the State raises the entrapment defense in its brief, the disputed evidence was not offered for the purpose of negating Headlee's entrapment defense at trial. The sole justification for admissibility was to explain to the jury how the police commenced their investigation of Headlee. Specifically, the State argued that it did not want the jury to be left with the impression that the police had set out on a "witch hunt for attorneys." (R. 384). As we have previously stated, this concern was adequately covered by the admission of other evidence.

 In light of the foregoing, even if the State was successful in arguing that it offered the evidence for the purpose of rebutting the entrapment defense, such evidence was nonetheless inadmissible hearsay. Furthermore, this evidence undoubtedly swayed the jury's verdict. If an error of this nature had substantial influence, or if we are left in grave doubt, a defendant's conviction cannot stand. *Hardin,* 611 N.E.2d at 132. We therefore reverse Headlee's conviction and remand for retrial.

Reversed and remanded.

SHARPNACK, C.J., and DARDEN, J., concur.