**Kurt WERTZ, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 54A01–0108–CR–321.**

Court of Appeals of Indiana.

July 17, 2002.

Jeffrey A. Boggess, Greencastle, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Kurt Wertz (Wertz), appeals his conviction for dealing in cocaine, a Class A felony, Ind.Code § 35–48–4–1.

We affirm.

### ISSUES

Wertz raises three (3) issues on appeal, which we restate as follows:

1. Whether the trial court erred in denying his Motion for Modification of Bond.

2. Whether the State presented sufficient evidence to support his conviction for dealing in cocaine.

3. Whether the trial court erred in admitting evidence of prior bad acts.

### FACTS AND PROCEDURAL HISTORY

On April 14, 2000, Jarrod Gruenholz (Gruenholz), a confidential informant, met with Officer Terry Judy (Judy) of the Hendrick's County Sheriff's Department to participate in a drug buy in Montgomery County, Indiana. Gruenholz and Judy met at a gas station. From the gas station, the men went to a hotel where police officers were waiting for them. Gruenholz and his vehicle were searched. Gruenholz and Judy then went back to the gas station.

At the gas station, Gruenholz called Wertz's pager from a payphone. Gruenholz and Wertz had a system for purchasing cocaine, as Gruenholz purchased cocaine from Wertz on previous occasions. Gruenholz would call a pager number, put in the telephone number of where he was calling from, and a dollar amount. The dollar amount indicated how much cocaine he wanted to purchase. On this particular day, Gruenholz indicated in his page to Wertz that he wanted to purchase $600.00 worth of cocaine. Thereafter, Wertz called Gruenholz. Gruenholz told Wertz that he wanted to introduce him to "Terry Wells," i.e. Judy. (Tr. p. 159). Gruenholz established with Wertz that Judy wanted to purchase cocaine. Approximately thirty (30) minutes later, Wertz arrived at the gas station with John Jones (Jones). Wertz motioned to Gruenholz to follow them.

Jones and Wertz drove into the country. Gruenholz and Judy followed them. Initially, police officers were following the vehicles; however, Judy told them to back off. Eventually, Jones stopped his vehicle on a gravel country road. Gruenholz then stopped his vehicle, got out, and walked to the passenger side of Jones' vehicle. Jones got out of his vehicle and walked to the driver's side of Gruenholz's vehicle. Gruenholz gave Wertz $600.00, which Judy had given to him earlier. A few moments later, Wertz nodded his head at Jones, and Jones threw what appeared to be a wadded up paper towel inside Gruenholz's vehicle. Judy picked up the paper towel and realized that there was something inside it. At some point, Judy looked inside the paper towel. He described its contents as follows: "it's kind of an ivory, off-white colored, um, there's some chunks, uh, it looks like a rock, or some ivory soap cut

up, or, and there's a bunch of small pieces, and to me it appears to be crack cocaine." (Tr. p. 220). The substance inside the paper towel was later discovered to be cocaine.

On April 19, 2000, the State filed an information against Wertz, charging him with dealing in cocaine. On May 12, 2000, the State filed a Motion for Enhanced Bail. On May 15, 2000, the trial court entered an Order, which set Wertz's bond at $1,000,000.00. On June 6, 2000, Wertz filed a Motion for Modification of Bond. On June 29, 2000, a hearing was held on Wertz's motion. At the conclusion of the hearing, the trial court found that the $1,000,000.00 bond was appropriate; thus, Wertz's motion was denied.

On June 26–28, 2001, a jury trial was held. At trial, Gruenholz, Judy and Jones testified. There was testimony that on April 14, 2000, Wertz accepted $600.00 from Gruenholz. There was also testimony that in exchange for the $600.00, Wertz directed Jones to put cocaine inside Gruenholz's vehicle. On June 28, 2000, the jury found Wertz to be guilty of dealing in cocaine.

On July 17, 2001, a sentencing hearing was held. Wertz was sentenced to the Indiana Department of Correction for a period of forty (40) years, thirty-five (35) years executed and five (5) years on a direct commitment to community corrections.

Wertz now appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

### I. *Motion for Modification of Bond*

Wertz argues that the trial court erred in denying his Motion for Modification of Bond. Specifically, Wertz argues that the $1,000,000.00 bond was excessive and beyond the amount necessary to en-

sure his appearance at future proceedings. The determination of whether to modify bond in a particular case is within the trial court's discretion and is reviewable only for an abuse thereof. *See Harvey v. State*, 751 N.E.2d 254, 258 (Ind.Ct.App.2001).

I.C. § 35–33–8–5 provides, in pertinent part, as follows:

(a) Upon a showing of good cause, the state or the defendant may be granted an alteration or revocation of bail by application to the court before which the proceeding is pending. In reviewing a motion for alteration or revocation of bail, credible hearsay evidence is admissible to establish good cause.

(b) When the state presents additional:

(1) evidence relevant to a high risk of nonappearance, based on the factors set forth in section 4(b) of this chapter; or

(2) clear and convincing evidence:

(A) of the factors described in IC 33–14–10–6(1)(A) and IC 33–14–10–6(1)(B); or

(B) that the defendant otherwise poses a risk to the physical safety of another person or the community;

the court may increase bail.

(c) When the defendant presents additional evidence of substantial mitigating factors, based on the factors set forth in section 4(b) of this chapter, which reasonably suggests that the defendant recognizes the court's authority to bring him to trial, the court may reduce bail. However, the court may not reduce bail if the court finds by clear and convincing evidence that the factors described in IC 33–14–10–6(1)(A) and IC 33–14–10–6(1)(B) exist or that the defendant otherwise poses a risk to the physical safety of another person or the community.

Additionally, in *Ray v. State,* 679 N.E.2d 1364, 1366 (Ind.Ct.App.1997), this court held, "[d]ue to the presumption of innocence, '[t]he object of bail very definitely is not to effect punishment in advance of conviction.' " *Id.* (quoting *Hobbs v. Lindsey, Sheriff, etc.,* 240 Ind. 74, 78, 162 N.E.2d 85, 88 (1959)). "Instead, the purpose of pre-trial bail is to allow an accused the opportunity to properly prepare his defense while also serving to insure his presence at trial." *Id.*

At the hearing on Wertz's motion, Captain Kurt Knecht (Knecht) of the Crawfordsville Police Department testified. He testified that his role in the investigation of Wertz involved assisting outside agencies—the United Drug Task Force. Knecht participated in transactions in Mace and Crawfordsville, Indiana, involving Wertz. He also assisted in the execution of a search warrant at Wertz's residence.

Knecht testified that he received information that Wertz intended to harm him. He obtained this information from a Montgomery County Sheriff. The sheriff advised him that "he had received a phone call that day, and, uh, information was that, uh, Kurt Wertz was attempting to locate my residence. Uh, in an attempt to have me killed." (Tr. p. 26). Additionally, Knecht received a telephone call from an attorney in Lafayette who informed him that "he had an individual in his office that was concerned for my safety and the safety of others, and wanted to share that information." (Tr. p. 27). Knecht met with the attorney and his client in Lafayette and learned that "Mr. Wertz had, uh, high-powered weapons in his possession; hand grenades in his possession; explosives in his possession, and had threatened to kill myself, a confidential informant, and any other law enforcement officers that were involved in the investigation." (Tr. p. 27).

Moreover, at the hearing, Wertz admitted to failing to appear in court on previous occasions. He also admitted that he has been convicted various crimes, e.g. criminal mischief, battery on a child, and domestic violence. Additionally, Wertz acknowledged that he violated his probation in the past.

With the above in mind, the trial court ruled as follows:

> The Court has already found in, in each of these cases that there's probable cause to believe that Mr. Wertz committed the offense that he's charged with. It is on that basis that the Court issued the warrants. The only thing the Court had before it when it made that, those determinations was simply the contents of the affidavits of probable cause. The Court believes that the evidence that's been submitted today creates a substantial concern for Mr. Wertz's appearance in Court, as well as for the safety and well being of, of other people, including the officers, and the people involved in this investigation from whatever, whatever angle they come to it. The the [sic] records of, of Mr. Wertz's charges, and, and more particularly his convictions, the probation violations, the Court's concern indicate disregard for the safety of and welfare of other people. That is, the battery charges that he's plead to. They indicate a disregard for the property of others. The the [sic] drug charges indicate a disregard for the safety and health and well being of other people. And also a disregard for the law and of the Courts, no respect for the Courts or the, or the grace by which people are granted probation. [A]nd that coupled with the reported threats that are made, the reports from Mr. Allen and Ms. Spielberger. Those two

people don't seem to be connected in any particular way other than through Mr. Wertz. [A]nd that along with the physical evidence that the officers have recovered, indicate to the Court that there's a substantial reason for concern and there's a substantial risk to the safety and welfare of, of people. The Court, in addition to that, the five felonies charge[d] are all A Felonies which carry substantial amounts of time. The potential is there for the time to be consecutive. And there's, therefore the Court believes a substantial risk of, of, Mr. Wertz failing to appear as he's failed to appear in the past. So, all that considered, the Court believes that the the the [sic] bond has been fixed as appropriate, although the Court acknowledges that it's high. Nevertheless, the Court believes that it's appropriate that it's necessary to ensure Mr. Wertz's appearance in Court, as well as the safety and welfare of other people. So the motion will be, the motion to modify bond will be denied.

(Tr. p. 54–5) (pause words omitted).

Granted, hearsay evidence was put before the trial court that Wertz intended to harm Knecht and others. Wertz objected to this evidence; however, the trial court overruled his objections and allowed the evidence. As stated above, credible hearsay evidence is admissible at such a hearing. *See* I.C. § 35–33–8–5. There is nothing in the record to show that this hearsay evidence was not credible. Additionally, the trial court relied on several other factors that did not involve hearsay, e.g. Wertz's failure to appear in court on previous occasions, prior convictions, and probation violations.

We cannot find that Wertz's bond, while high, punished him in advance of conviction. *See Ray*, 679 N.E.2d at 1366. Rather, we find that the trial court determined

by clear and convincing evidence that Wertz posed a risk to the physical safety of others. *See* I.C. § 35–33–8–5. We also find that the trial court properly found that there was a risk that Wertz would fail to appear in court as directed. *See id.* Therefore, it is our determination that the trial court did not abuse its discretion in denying Wertz's Motion for Modification of Bond. *See Harvey*, 751 N.E.2d at 258.

### II. *Sufficiency of the Evidence*

Wertz argues that the State did not present sufficient evidence to support his conviction for dealing in cocaine. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or judge the credibility of the witnesses. *Mabbitt v. State*, 703 N.E.2d 698, 700 (Ind.Ct.App.1998). We consider only the evidence most favorable to the verdict and the reasonable inferences therefrom and will affirm if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Id.* Reversal is only appropriate when reasonable persons would be unable to form inferences as to each material element of the offense. *Id.*

I.C. § 35–48–4–1 provides, in pertinent part, as follows:

  (a) A person who:

    (1) knowingly or intentionally:

       . . .

    (C) delivers;

       . . .

cocaine, a narcotic drug, or methamphetamine, pure or adulterated, classified in schedule I or II; or

       . . .

commits dealing in cocaine, a narcotic drug, or methamphetamine, a Class B felony, except as provided in subsection (b).

  (b) The offense is a Class A felony if:

(1) the amount of the drug involved weighs three (3) grams or more;

Wertz does not dispute that the substance delivered to Gruenholz and/or Judy was cocaine, nor does he dispute that the cocaine weighed three (3) grams or more. Rather, he argues that Gruenholz cannot be regarded as a credible witness, because he was attempting to "work off" forgery and robbery charges. (Appellant's Brief p. 8). Wertz maintains that "[w]ithout results actually setting up drug buys, [Gruenholz] would not be granted any leniency on the charges." (Appellant's Brief p. 8). Furthermore, he insists that Jones had ample reason to fabricate and exaggerate his testimony, as Jones testified against him pursuant to a plea agreement. Additionally, Wertz contends that Judy's testimony was not reliable, because he "could not have seen the activities in [Jones' vehicle]." (Appellant's Brief p. 9). Wertz also points out that Gruenholz and Judy testified that he did not physically deliver the cocaine to either of them.

■ A court may impinge on a jury's responsibility to judge the credibility of the witnesses if it has been confronted with wholly uncorroborated testimony of incredible dubiousity. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994). However, this rule is limited to such cases "where a **sole witness** presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Id.* (emphasis added). In the present case, Gruenholz and Judy testified that Wertz accepted money in exchange for cocaine. Moreover, Gruenholz, Judy, and Jones testified that Wertz was the person in charge of the transaction, whereas Jones was simply the person who handed over the cocaine. With this in mind, we cannot find that the testimony of Gruenholz, Judy, and Jones was incredibly

dubious. *See id.* Essentially, Wertz has invited this court to reweigh the evidence and judge the credibility of the witnesses. We decline this invitation and find that there is substantial evidence of probative value to support the conclusion of the trier of fact. *See Mabbitt,* 703 N.E.2d at 700.

## III. *Prior Bad Acts*

■ Finally, Wertz argues that the trial court erred in allowing the State to present evidence of prior bad acts. It is within the sound discretion of the trial court to admit or exclude evidence. *Hardiman v. State,* 726 N.E.2d 1201, 1203 (Ind.2000). This court will not reverse the trial court absent an abuse of that discretion. *Id.* A trial court abuses its discretion when its evidentiary ruling is clearly against the logic, facts and circumstances presented. *Id.*

■ Ind. Evidence Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The rationale behind Evid. R 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Monegan v. State,* 721 N.E.2d 243, 248 (Ind.1999). When a defendant objects to the admission

of evidence on the grounds that it violates Evid. R. 404(b), we: (1) determine whether evidence of prior bad acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of such evidence against its prejudicial effect. *Id.*

In the present case, Wertz filed a Motion in Limine, requesting that evidence of prior bad acts be excluded at trial. This motion was granted. At trial, the State elicited testimony from Gruenholz and Judy about prior drug transactions involving Wertz. Wertz objected to these questions. However, the trial court overruled his objections and stated that the questions did not go to Wertz's character; rather, the questions helped establish motive, intent, identity, and/or mistake. Eventually, Wertz's counsel requested that a continuing objection to such questions be noted, as he was continually objecting and interrupting the trial. The continuing objection was noted.

■ Prior to requesting a continuing objection to questions concerning prior bad acts, Wertz's counsel argued to the trial court, in pertinent part, as follows:

> [N]ot to be overly repetitious but we're going down the same road we did before. I know that you, you've let it in so far, but this is just re-hammering bad acts to, to prove their case through other, other bad acts. It's necessarily, uh, continue[s] to be, I'm asking for the same reason for what we did before. So, I, that would be the point of my objection down this road with this witness.

(Appellant's App. p. 50). Defense counsel made an excellent point. Even if questions involve proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident instead of character, there is certainly a point where the repetitive nature of such questions stops proving

one of the listed exceptions under Evid. R. 404(b) and begins to prove a defendant's character. Consequently, we find that while evidence of prior bad acts may have been relevant to a matter at issue, the cumulative nature of such questions had a prejudicial effect that outweighed their collective probative value. *See Monegan,* 721 N.E.2d at 248.

With the above in mind, we find that the trial court's continual overruling of defense counsel's objections was clearly against the logic, facts and circumstances presented. *See Hardiman,* 726 N.E.2d at 1203. Nonetheless, we find that the error was harmless. "The improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Headlee v. State,* 678 N.E.2d 823, 826 (Ind. Ct.App.1997), *reh'g denied, trans. denied.* As previously stated, there was substantial evidence from which the jury could have concluded that Wertz dealt cocaine on April 14, 2000. Accordingly, while the trial court abused its discretion in continuing to allow evidence of Wertz's prior bad acts, we find the error to be harmless. *See id.*

### CONCLUSION

Based on the foregoing, we conclude that Wertz was properly convicted of dealing in cocaine.

Affirmed.

MATTINGLY–MAY, J., and VAIDIK, J., concur.