**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARCUS BUBA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1306-CR-287 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Richard Striegel, Senior Judge
Cause No. 10C01-1302-FB-33

**February 20, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Marcus Buba appeals the trial court's denial of his motion to reduce his bond to zero on the condition that he report immediately to Clark Memorial Hospital Behavioral Unit. Finding that the trial court did not abuse its discretion in declining to reduce Buba's bond, we affirm.

**Facts and Procedural History**

In February 2013, Buba was charged with Class B felony attempted carjacking and Class D felony intimidation relating to his mother, Lisa Buba. Appellant's App. p. 7. At the initial hearing, the trial court set bond at $75,000 court cash. *Id.* at 2. The trial court also entered a no-contact order with his sister Victoria Buba and his girlfriend Abigail Frazier. *Id.* In April 2013, Buba filed a motion to reduce his bond to zero on the condition that he report immediately to Clark Memorial Hospital Behavioral Unit. *Id.* at 71. The motion alleged in pertinent part that Buba suffers from severe mental illness, jail is not equipped to appropriately evaluate, diagnose, and treat severe mental illness, and that Buba is more of a danger to himself than to others. *Id.* at 71-73. Along with the motion, defense counsel submitted affidavits from Lisa, Victoria, and Abigail, records from Clark Memorial Hospital, and two competency-to-stand-trial evaluations.

In June 2013, the court held a bond hearing on Buba's Class B felony attempted carjacking and Class D felony intimidation charges. At the hearing, defense counsel argued that Buba's bond was excessive and went through each factor of Indiana Code section 35-33-8-4(b).

The information submitted by defense counsel reveals that Buba has significant mental health issues. At age sixteen, while living in New Jersey, he was sent to VisionQuest, a place for troubled youth. While there, he went to counseling and was diagnosed with intermittent explosive disorder and was considered borderline bi-polar. He was prescribed Seroquel, which helped manage his mental illness. After he was released from VisionQuest, he was better as long as he continued to take his medicine. However, approximately three months after he was released from VisionQuest, Buba's insurance was discontinued. As soon as he stopped taking the medicine, he regressed to his former behavior. He experienced episodes and had altercations with Victoria.

In April 2012, when Buba was twenty-two years old, Lisa finally convinced him to go to a mental-health hospital. Buba was first taken to Floyd County Hospital. While there, Lisa was interviewed by a medical provider from Wellstone Regional Hospital, a psychiatric hospital. She learned that Buba was suicidal, homicidal, possibly bi-polar, and very angry. The medical professional concluded that Buba needed help. Buba's father was also diagnosed with bi-polar disorder and committed suicide when he was only twenty-five years old.

Buba was then taken to Wellstone Regional Hospital. But because Buba did not have health insurance, he was transferred from Wellstone Regional Hospital to Clark Memorial Hospital's Behavioral Unit. Buba chose to leave the facility against medical advice.

Since then, Lisa has been attempting to get her son help. She took him to LifeSpring, but LifeSpring would not treat Buba because he had no way to pay for services. In February 2013, just before he was arrested in this case, Buba tried to kill himself.

Evidence at the bond hearing also revealed that Buba has had significant problems with the law. According to Lisa, Buba started becoming hostile when he was only thirteen years old. At age sixteen, he threatened his mother, causing her to call the police and have him arrested. Buba has been in jail ten times. Tr. p. 29. His criminal history includes charges for illegal consumption and intimidation in 2009, assault and battery in 2010, and battery in 2011. *Id.*; Appellant's App. p. 11. At the time of the alleged offenses, Buba was on probation for Class C felony battery. Tr. p. 29. Defense counsel also acknowledged that the nature of the alleged offenses were serious. *Id.* at 23.

At the bond hearing, the State asked the court to review the probable-cause affidavit, emphasizing the violence displayed by Buba during the commission of the alleged offenses. *Id.* at 30.

At the conclusion of the hearing, the trial court stated that Buba was a threat to the community and that his mental illness causes him to become violent and get in trouble with the law. The trial court denied his motion to reduce bond on the condition that he report immediately to the Clark Memorial Hospital Behavioral Unit. *Id.* at 37-38.

Buba now appeals.[1]

---

[1] According to the Odyssey Case Management System, a plea agreement for this case was filed on October 29, 2013. However, on November 19, 2013, a motion to withdraw and report of action taken by defense counsel prior to withdrawal was filed. On February 10, 2014, the trial court scheduled a change of plea hearing for February 24, 2014. As of February 14, 2014, no additional filings or orders have been made.

4

**Discussion and Decision**

Buba appeals the trial court's denial of his motion for a bond reduction. The reduction of the amount of bail is within the trial court's discretion and will only be reversed if the trial court abused its discretion. *Lopez v. State*, 985 N.E.2d 358, 360 (Ind. Ct. App. 2013). A trial court abuses its discretion "when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." *Winn v. State*, 973 N.E.2d 653, 655 (Ind. Ct. App. 2012).

Excessive bail is prohibited by the Indiana Constitution. Ind. Const. art. 1, § 16. Bail is excessive if it is "set at an amount higher than reasonably calculated to ensure the accused party's presence in court." *Sneed v. State*, 946 N.E.2d 1255, 1257 (Ind. Ct. App. 2011) (citing *Hobbs v. Lindsey*, 240 Ind. 74, 79, 162 N.E.2d 85, 88 (1959)); *see also* Ind. Code § 35-33-8-4(b) ("Bail may not be set higher than the amount reasonably required to assure the defendant's appearance in court . . . .").

Motions to alter or reduce bail are governed by Indiana Code section 35-33-8-5. According to that provision, the defendant may be granted an alteration or revocation of bail "[w]hen the defendant presents additional evidence of substantial mitigating factors, based on the factors set forth in [Indiana Code section 35-33-8-4(b)], which reasonably suggests that the defendant recognizes the court's authority to bring the defendant to trial . . . ." Ind. Code § 35-33-8-5. The factors enumerated in Section 35-33-8-4(b) include:

(1) the length and character of the defendant's residence in the community;

(2) the defendant's employment status and history and his ability to give bail;

(3) the defendant's family ties and relationships;

5

(4) the defendant's character, reputation, habits, and mental condition;

(5) the defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring him to trial;

(6) the defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) the nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) the source of the funds or property to be used to post bail or pay a premium, insofar as it affects the risk of nonappearance;

(9) the defendant is a foreign national who is unlawfully present in the United States under federal immigration law; and

(10) any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring him to trial.

I.C. § 35-33-8-4(b).

Here, we find that several factors weigh against granting Buba a bond reduction. Buba's character, reputation, habits, and mental condition weigh against reducing his bond. The record shows that Buba is a danger to himself and other members of the community. In her competency evaluation, Dr. Heather Henderson-Galligan noted that Buba has "homicidal ideation." Appellant's App. p. 308. According to Dr. Henderson-Galligan, "[Buba] does not have a plan or intent or specific victim in mind." *Id.* Instead, he has had previous plans to hurt and kill, but he has never acted on it. *Id.* Additionally, Buba told Dr. Henderson-Galligan that he was being held in protective custody while incarcerated because, he has "enemies and [he] likes to piss people off." *Id.* Moreover, while Buba has sought treatment in the past, he checked himself out of a mental-health facility against medical advice.

Additionally, the nature and gravity of his offenses weigh against reducing Buba's bond. Buba has been charged with a Class B and a Class D felony. If he is convicted of Class B felony attempted carjacking, he could be imprisoned for a period of six to twenty years. Ind. Code § 35-50-2-5. Similarly, Buba could be imprisoned for a period of six months to three years for his Class D felony intimidation charge. Ind. Code § 35-50-2-7(a). As we stated in *Sneed*, the possibility of a higher penalty "tends to increase the risk that [the Defendant] will fail to appear for trial . . . ." 946 N.E.2d at 1259. Because Buba could be incarcerated for up to twenty years, it is more likely that he will not appear for his trial. In light of these charges, the amount of Buba's bond is not excessive. *See Wertz v. State*, 771 N.E.2d 677, 680-82 (Ind. Ct. App. 2002) (affirming bail of $1,000,000 for defendant charged with one count of Class A felony dealing in cocaine, when trial court found defendant posed a risk to safety of others and defendant had a history of failing to appear in court); *Custard v. State*, 629 N.E.2d 1289, 1292 (Ind. Ct. App. 1994) (affirming bail of $275,000 for defendant charged with one count of Class A felony dealing in cocaine, but defendant had only lived in Indiana for six months).

Moreover, Buba has accumulated quite a criminal history. Not only has Buba been in jail ten times, but he was on probation for Class C felony battery when he was arrested for the underlying alleged offenses. His significant criminal history and the fact that he allegedly committed these new crimes while on probation for Class C felony battery shows instability and disdain for authority.

We acknowledge that some factors weigh in favor of reducing Buba's bond. First, Buba has been living in the Sellersburg area since fall 2008. Appellant's App. p. 299.[2] Second, Buba has a family who cares about him. Tr. p. 10; Appellant's App. p. 302. Both his mother and sister submitted affidavits stating that they have been supportive of Buba for years and want him to receive the mental-health services he needs. However, despite this support, Lisa stated that Buba can live with her only after he gets the help he needs. Moreover, both his girlfriend and his sister have no-contact orders against him. Third, Buba has demonstrated that he has respect for the court's authority to bring him to trial. According to defense counsel, Buba has appeared for all court dates in past criminal proceedings. Tr. p. 22. There was only one instance where Buba was not informed of a court date, but he immediately went to the court clerk, rescheduled his court date, and appeared at the new date. *Id.*

Although some factors weigh in favor of reducing Buba's bond to zero, the trial court determined that they were outweighed by factors weighing against reduction. It concluded:

> In this case, we have a defendant who's repeatedly been in and out of jail. He has prior criminal issues that are confrontational and places people in fear and it's been not only a girlfriend, but members of his own family have been through this situation. That is a very serious consideration, the threat, the potential threat to the community and of the State for the authority of the Court and that comes under item 4, his mental condition that causes him to, his character, his mental condition that causes repeatedly be involved in these things down through the years, including even attempting suicide himself. To say that that does not -- that overrides all the rest of these factors as far as I'm concerned.

---

[2] At trial, Buba stated that he moved with his mother to Indiana in October 2007. Tr. p. 8.

*Id.* at 37-38. Based upon the trial court's conclusion, Buba argues that the trial court only considered his criminal history and his mental illness, rather than all of the factors enumerated in the statute. Appellant's Br. p. 15. However, his criminal history and mental illness were valid considerations in the statute because they indicate instability and a disdain for authority. *See* I.C. § 35-33-8-4(b).

Moreover, the court concluded that these two factors override the other statutory factors. In other words, the trial court considered all of these factors and determined that Buba's mental-health concerns and criminal history outweighed other factors favoring bond reduction. We cannot say that the trial court's decision was clearly against the logic and effect of the facts and circumstances when it declined to reduce Buba's bond to zero on the condition that he report immediately to Clark Memorial Hospital Behavioral Unit.

Affirmed.

MAY, J., concurs.

RILEY, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

MARCUS BUBA,                          )
                                      )
    Appellant-Defendant,          )
                                      )
        vs.                 )        No. 10A01-1306-CR-287
                                      )
STATE OF INDIANA,                     )
                                      )
    Appellee-Plaintiff.           )

**RILEY, Judge concurring in part and dissenting in part.**

While I concur with the majority's decision that the amount of the bail was not excessive, I respectfully dissent in part because the trial court abused its discretion by not providing Buba the option of a surety bond.

By statute, a trial court has several options regarding the manner of executing bail. It may require the defendant to: execute a bail bond with sufficient solvent sureties; deposit cash or securities in an amount equal to the bail; deposit cash or sureties in an amount not less than ten percent of the bail, as a court-sponsored bail; execute a bond secured by real estate in the county; post a real estate bond; or perform any combination of the above requirements. *See* I.C. § 35-33-8-3.2(a). This statute, like the statute governing the amount

10

of bail, "also places the manner of executing the bail within the discretion of the trial judge." *Sneed v. State*, 946 N.E.2d 1255, 1260 (Ind. Ct. App. 2011).

The record shows that Buba was without funds to post the entire $75,000 in cash. Thus, it is only proper to consider the type of bail set by the trial court. In effect, by denying Buba the option of a surety bond provided by a bail bondsman,[3] the trial court condemned Buba to jail pending a trial without explicitly ordering him to be held or articulating any reason for doing so. While Buba's criminal history and mental illness support a bond set at $75,000, the absence of any factors suggesting Buba is a flight risk or disrespects the court's authority lead me to conclude that the trial court abused its discretion by requiring a cash only bail without offering Buba the option of a surety bond. Therefore, I would affirm the amount of the cash bond but would remand with instruction for the trial court to set a cash bond or a surety bond.

---

[3] I find it appropriate to repeat the major difference between a surety bond and a cash bond:

A bail bondsman will, in return for a non-refundable fee paid by the defendant, put up his own money with the trial court in the form of a surety, pledging to cover the defendant's bail. Because the bondsman is risking the entire amount if the defendant fails to appear for trial, the bondsman has a powerful incentive to return the defendant to court to face charges. On the other hand, when the defendant is able to deposit the entire amount of the cash bail without the help of a bondsman, it is not very likely anyone will pursue the defendant if he or she decides to skip town prior to trial.

*Sneed*, 946 N.E.2d at 1260 n.4.